IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY R. HU and STEPHANIE F. HU,<br><br>    Plaintiffs,<br><br>  v.<br><br>LANEY LEE, JASON WANG, STEWARD WANG, I-95 MALL OF ASIA INC., A.T.E.C. HOLDING INC., AMERICAN PRODUCTS EXHIBITION & EXCHANGE CENTER (CHINA), INC., CHINA PRODUCTS EXHIBITION & EXCHANGE CENTER (U.S.A.), ETRADE GUARANTEE ASSURANCE CORP., EASY EXPRESS SERVICES CORP.,<br><br>    Defendants. | Case No. 09-2588 SC<br><br>ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT |

**I.   INTRODUCTION**

Plaintiffs Henry R. Hu and Stephanie F. Hu ("Plaintiffs") seek entry of Default Judgment. ECF No. 61 ("Appl. for Default J."). Having considered the papers submitted, the Court GRANTS Plaintiffs' Application for Default Judgment against Defendants Laney Lee, Jason Wang, Steward Wang, and I-95 Mall of Asia Inc. ("I-95").

**II.  BACKGROUND**

The following allegations are taken from Plaintiffs' Complaint. Plaintiffs, husband and wife, reside in San Mateo

County. ECF No. 1 ("Compl.") ¶ 16. Henry R. Hu is an immigration attorney. Id. I-95 is a Maryland corporation formed by Jason Wang in 2004. Id. ¶¶ 17-18. Laney Lee is Jason Wang's wife and Steward Wang is their son. Id. ¶¶ 19, 22. Laney Lee was a director and officer of I-95, and Steward Wang was I-95's Director of Sales and Marketing. Id.

Based on solicitations and representations made by I-95 employees, Plaintiffs purchased $250,000 worth of securities in I-95 in 2005. Id. ¶¶ 3-40. The Stock Purchase Agreement states that I-95 owned 140 acres of land adjacent to Interstate 95 in Maryland, a 250,000 square-foot commercial building, and "[a]s of August 31, 2005, the total appraised assets (visible and invisible) of [I-95] is USD 100,000,000." Id. ¶ 34; Hu Decl. Ex. 4 ("Stock Purchase Agreement").[1]

In 2007, Plaintiffs became concerned about their investment and began investigating the corporation's financial status. Compl. ¶¶ 46-49. The federal tax returns of the corporation revealed that it did not own land or buildings, and it did not have assets worth $100 million, as represented in the Stock Purchase Agreement. Id. ¶ 53. At a meeting between Henry Hu and Jason Wang on November 4, 2008, Jason Wang admitted that the statements concerning real estate properties in the Stock Purchase Agreement were not true. Id. ¶ 57. According to Plaintiffs, Defendants have defrauded others in a similar manner. Hu Decl. ¶¶ 48-51. Plaintiffs are suing Defendants for securities fraud. Id. ¶¶ 60-72.

---

[1] Henry R. Hu is representing himself and his wife in this case. He filed a declaration in support of the Application for Default Judgment. ECF No. 61-1. For Exhibit No. 4, see ECF No. 61-3.

2

### III. LEGAL STANDARD

After entry of a default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Its decision whether to do so, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors. As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default is requested." Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

If the Court determines that service was sufficient, it should consider whether the following factors support the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).

### IV. DISCUSSION

#### A. Service of Process and Dismissal of Remaining Defendants

After various unsuccessful attempts to serve many of the Defendants in this case, the Clerk entered default against Laney Lee, Jason Wang, Steward Wang, and I-95. See ECF Nos. 14, 22, 39,

51. Steward Wang was personally served on June 14, 2009, Jason Wang and Laney Lee were served by substituted service on June 14, 2009, and the corporation, I-95, was served by leaving a copy of the summons and complaint with Steward Wang, an officer of the corporation, at the corporation's business address on June 15, 2009. ECF No. 5 ("Aff. of Process Server"). On June 29, 2009, Jason Wang, on behalf of I-95, sent a letter to Plaintiffs stating "We have received the summons in a civil action for the above referenced case. Mr. Jason Wang and Miss Laney are currently in China for company's [sic] business. We will respond to your complaint as soon as we return to the United States." Hu Decl. Ex. 20 ("June 29, 2009 Letter"). Clearly, these Defendants had notice of the lawsuit. Service of process on these four Defendants was adequate.

With regard to the other Defendants, Plaintiffs has filed a Notice of Voluntary Dismissal. ECF No. 61-6 ("Supplemental Mot. to Dismiss"). A number of the Defendants named in this document -- Runan Zhang, Anita Bei Huang, Jerry Huang, Edward Wong, King Mark, Kathy Wang, and Andy Ting -- were dismissed earlier in these proceedings. See ECF Nos. 52, 57. The Court hereby DISMISSES the remaining Defendants: A.T.E.C. Holding Inc., American Products Exhibition & Exchange Center (China), Inc., China Products Exhibition & Exchange Center (U.S.A.), Inc., ETrade Guarantee Assurance Corp., and Easy Express Services Corp.[2]

---

[2] The Court notes that Plaintiffs filed an amended complaint without obtaining leave of the Court to do so. See ECF No. 31. The amended complaint merely adds Defendants who have now been dismissed from this case. The affidavit of the process server shows that Defendants Laney Lee, Jason Wang, Steward Wang, and I-95 were served with the original complaint, not the amended complaint.

**B.   Default Judgment**

The Eitel factors favor default judgment.  Without default judgment, Plaintiffs will be prejudiced because they will be left without any obvious means of recovering their $250,000 investment.

In a letter dated September 9, 2010, Jason Wang states that he is in hospital in Taiwan due to heart disease, that his wife Laney Lee and his son Steward Wang are with him, and that he and his family have been unable to hire a lawyer.  ECF No. 62 ("Sept. 9, 2010 Letter").[3]  The letter contains a request for more time to respond to the lawsuit.  Id.  Plaintiffs' Complaint was filed on June 10, 2009, and served four or five days later.  ECF No. 1, 5.  These Defendants had ample time to respond to the Complaint.  Defendants have made no showing of excusable neglect.[4]

Accepting as true the allegation that Plaintiffs purchased shares of I-95 based on false representations about I-95's assets, Plaintiffs have stated a claim for securities fraud.  Plaintiffs' substantive claim has merit, and the Complaint is sufficient.  Although federal policy favors a decision on the merits, Rule 55(b) allows entry of default judgment in situations such as this, where Defendants have failed to litigate.  Courts are less inclined to enter default judgment if there is a large sum of money at stake.

---

See ECF No. 5.  The Court disregards the amended complaint, views the original complaint as the operative one, and notes that the four remaining Defendants were served with the original complaint.

[3] This letter was sent by Jason Wang to Henry Hu, who subsequently filed it with the Court attached to another copy of the Application for Default Judgment.  See ECF No. 62.  The letter also consists of medical records showing that Jason Wang is a patient in Taipei Veterans General Hospital.

[4] Defendants have not formally appeared.  If Defendants have grounds for relief, the Court has the power to set aside this default judgment under Rule 60(b).

5

See Eitel, 782 F.2d at 1472 (denying default judgment where plaintiff sought almost three million dollars). Here, Plaintiffs seek return of their $250,000. Appl. for Default J. at 2. While a considerable amount of money is at stake, the Court finds that, on balance, the Eitel factors favor default judgment.

### C. Remedies

Without providing any legal analysis explaining the basis for their request, Plaintiffs request injunctions against Defendants freezing their assets, appointing a receiver, and requiring an accounting from each Defendant. Appl. for Default J. at 2. Plaintiffs also seek disgorgement of ill-gotten gains, prejudgment interest on their damages award, and unspecified civil penalties. Id. at 2-3. The Court DENIES these requested remedies.

The computation of damages in a securities fraud case is not a straightforward matter. Rescission, however, is a recognized remedy in Section 10(b) and Rule 10b-5 cases. Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975). Here, the evidence shows Plaintiffs sent a total of $250,000 to I-95 by two wire transfers on December 2, 2005 and December 3, 2005, in exchange for 500,000 shares of I-95. Hu Decl. Exs. 6, 7. The Court hereby rescinds this purchase. Plaintiffs no longer own shares of I-95. The Court awards Plaintiffs $250,000, the amount they invested in I-95.

## V. CONCLUSION

The Court DISMISSES the following Defendants: A.T.E.C. Holding Inc., American Products Exhibition & Exchange Center (China), Inc., China Products Exhibition & Exchange Center (U.S.A.), Inc., ETrade Guarantee Assurance Corp., and Easy Express

6

Services Corp.

The Court GRANTS the Application for Default Judgment filed by Plaintiffs Henry R. Hu and Stephanie F. Hu against Defendants Laney Lee, Jason Wang, Steward Wang, and I-95 Mall of Asia Inc. in the amount of $250,000.

IT IS SO ORDERED.

Dated:   September 20, 2010      

UNITED STATES DISTRICT JUDGE

7